IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

    JAGA, INC., et al.                   Bankruptcy No. 02-51295 etc.

        Debtor.

BETTY C. ROSE,

        Plaintiff,

v.                                     Civil Action No. 5:05CV166

JAGA, INC.,
INTERNATIONAL SOCIETY FOR KRISHNA
CONSCIOUSNESS, NEW MATHURA VRINDABAN,
NRS, INC.,
INTERNATIONAL SOCIETY FOR KRISHA
CONSCIOUSNESS OF WEST VIRGINIA,
NEW VRINDABAN COMMUNITY, INCORPORATED
AND CATHEDRAL OF HEALING, INC.,
WEST VIRGINIA BUREAU OF EMPLOYMENT PROGRAMS,
TORT CLAIMANTS and CLASS ACTION PLAINTIFFS,

        Defendants.

**MEMORANDUM OPINION AND ORDER
VACATING IN PART SUMMARY JUDGMENT
AND REMANDING FOR FURTHER CONSIDERATION**

Betty C. Rose ("Rose"), Trustee of the Tatia Rose Trust, appeals an order from the bankruptcy court that granted a motion for summary judgment in favor of JAGA, Inc. and associated debtors (collectively, "Debtors"),[1] and overruled Rose's objection that a 1968 Land Agreement ("Agreement") should have been either

---

[1] Associated debtors include International Society for Krishna Consciousness New Mathura Vrindaban, NRS, Inc., International Society for Krishna Consciousness of West Virginia, New Vrindaban Community, Inc. and Cathedral of Healing, Inc.

automatically terminated as an unassumed lease for nonresidential property pursuant to 11 U.S.C. § 365(d)(4), or terminated for breach of an implied covenant in the lease, itself. For the reasons stated below, this Court finds that this action should be remanded to the United States Bankruptcy Court for the Northern District of West Virginia for further consideration of the Agreement pursuant to West Virginia law and § 365(d)(4).

## I. Background

Rose's appeal concerns the status of 132 acres of real property in Marshall County, West Virginia. In 1968, the property was transferred from Richard Rose, Jr. and Phyllis E. Rose to Howard Wheeler pursuant to a 99 year Agreement titled a "lease." Under the terms of the Agreement, Wheeler paid a total of $4,000.00, of which $1,500.00 was paid upon execution of the Agreement and the remaining $2,500.00 was paid over the first five years of the Agreement. The Agreement also required Wheeler to pay all real estate taxes.

Assignment rights were limited by the terms of the Agreement. Wheeler needed permission from the Roses, their heirs or representatives if he wished to assign the Agreement to third parties, in general. However, the Agreement freely granted Wheeler the right to assign his rights under the Agreement without permission to "a religious foundation, or religious institution, or religious corporation, or any group that shall hold generally to

2

the philosophic concept of maintaining a religious retreat or philosophic Ashram . . ." See Agreement, Bankr. Docket, Item 5, Ex. A. On February 1, 1974, Wheeler assigned his interests under the Agreement to the New Vrindaban Community, Inc.

On April 16, 2002, the Debtors, including the New Vrindaban Community, Inc. to whom the property was assigned, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of West Virginia. On August 11, 2004, the Debtors filed their plan and disclosure statement.

As stated above, Rose objected to the Debtors' plan and disclosure statement maintaining that the 1968 Agreement was improperly characterized. On cross-motions for summary judgment, the bankruptcy court determined that the Agreement was not a true lease under federal law for purposes of § 365(d)(4), and therefore, that the assumption or rejection language of that provision was inapplicable. Moreover, the bankruptcy court rejected Rose's arguments that the 1974 assignment was improper and that the Agreement was forfeited for violation of the covenant against illegal or immoral activities.

On appeal, Rose argues that the bankruptcy court erred by failing to find the Agreement to be a true lease triggering the default termination provision of § 365(d)(4). In addition, Rose argues that summary judgment should not have been granted in favor of the Debtors because issues of material fact exist as to whether

an alleged improper assignment terminated the Agreement and whether alleged violations of implied covenants terminated the Agreement.

## II. Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. See In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992); Travelers Ins. Co. v. Bryson Prop., XVIII (In re Bryson Prop., XVIII), 961 F.2d 496, 499 (4th Cir.), cert. denied sub nom., Bryson Prop., XVIII v. Travelers Ins. Co., 506 U.S. 866 (1992). Accordingly, this Court reviews de novo the bankruptcy court's application of federal law to find that the Agreement was not a true lease for purposes of § 365(d)(4).

## III. Discussion

### A. Applying State Law to Determine if True Lease

In the bankruptcy court's August 17, 2005 order denying summary judgment in favor of Rose and granting summary judgment in favor of the debtor, the bankruptcy court reasoned that if the Agreement was a true lease, the assumption and rejection provisions of § 365(d)(4) would apply and the Court would consider whether the property was residential or nonresidential, whether the 1974 assignment was valid and whether any covenants were broken that could have resulted in forfeiture of rights under the Agreement. (Order at 2.) If the Agreement was not a true lease, the bankruptcy court found that § 365(d)(4) would be inapplicable, the

4

question of whether the lease was residential or nonresidential would be irrelevant, and the Court would need only consider whether the 1974 assignment was valid and whether any covenants were broken.

Section 365(d)(4) states in pertinent part:

> . . . [I]f the trustee does not <u>assume or reject</u> an <u>unexpired lease of nonresidential real property</u> under which the debtor is the lessee within <u>60 days</u> after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is <u>deemed rejected</u>, and the <u>trustee shall immediately surrender such nonresidential real property to the lessor</u>.

<u>Id.</u> (emphasis added).

There is no dispute that the bankruptcy trustee neither rejected nor assumed the 1968 Agreement. Instead, the focus is on the automatic termination provision and the meaning of "lease" in § 365(d)(4). The bankruptcy court held that state law was not applicable to the definition of lease for purposes of § 365(d)(4). This Court disagrees.

As a general rule, the determination of property rights in the assets of a bankrupt's estate is a matter of state law. <u>In re Merrit Dredging Co., Inc.</u>, 839 F.2d 203, 205 (4th Cir. 1988). The Fourth Circuit elaborates:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Merrit Dredging at 206 (citing Butner v. United States, 440 U.S. 48, 55 (1979)).

Turning to the Bankruptcy Code, this Court recognizes that the term "lease" is not specifically defined. However, this Court acknowledges that § 365(d)(4) requires for its operation, and as a matter of federal law, a substantive lease. As Judge Easterbrook explains, it is helpful in defining "lease" in § 365(d)(4) to consider the distinction that the Code makes between new expenses and old debt. See United Airlines, Inc. v. HSBC Bank USA, N.A., 416 F.3d 609, 612-13 (7th Cir. 2005). When a firm emerges from bankruptcy, it is generally required to cover all new expenses while debt acquired before bankruptcy is adjusted. In this vein,

> Section 365, which deals with leases, classifies payments for retaining airplanes and occupying business premises as new expenses, just like payments for labor and jet fuel. The rules for credit, by contrast, treat debt service as an "old" expense to be adjusted to deal with financial distress.

Id. at 613. "This works nicely when rent under a lease really does pay for new inputs . . . [b]ut "rent" that represents the cost of funds for capital assets or past operations . . . has the quality of debt." Id. (emphasis included). Thus, to treat as a lease an instrument that, in substance, creates a security interest is to frustrate an important distinction made in the bankruptcy code between new expenses and old debt.

Accordingly, federal law requires a court to interpret a "lease" in § 365(d)(4) as meaning a lease in substance, not merely

in form. Nevertheless, to determine the exact substantive formula that constitutes a lease from state to state, federal law is silent and a court must return to state law for guidance. See Merrit Dredging at 206; Butner at 55; see e.g. United Airlines at 615; Baker v. Harris Pine Mills, 862 F.2d 217, 220 n.5 (9th Cir. 1988).

It is at this juncture that this Court departs from the bankruptcy court's rationale. Relying on United Airlines and In re Moreggia & Sons, Inc., 852 F.2d 1179 (9th Cir. 1987), the bankruptcy court found that state law was irrelevant in its analysis of the lease at issue in this action. To the contrary, United Airlines states that, "because nothing in the Bankruptcy Code says which economic features of a transaction have what consequences, we turn to state law." United Airlines at 615.

Similarly, the bankruptcy court's reliance on In re Moreggia appears to be misplaced. Only four months after the opinion in In re Moreggia, the Ninth Circuit turned to Oregon law to define an agreement for purposes of § 365. Baker at 220. The Ninth Circuit explained that, while federal law requires a lease to be a true lease in economic substance, "what constitutes a lease or a landlord tenant relationship as a matter of economic substance, depends on state law, not on the Bankruptcy Code, absent statutory authority." Id. at 220 n.5 (citations omitted).[2]

---

[2]Baker attempts to distinguish In re Moreggia by indicating that § 365(d)(4) may require further analysis where an instrument is a lease under state law, but lacks a landlord tenant

7

In this case, the Agreement involved real property in West Virginia. While this Court is not critical of elements applied by the Second Circuit upon which the bankruptcy court relied to find no lease, this Court recognizes that "federal judges are not the source of state law or even its oracles." United Airlines at 616. Accordingly, this Court finds that the bankruptcy court should have considered West Virginia law in order to determine whether the Agreement constituted a lease so long as West Virginia identifies leases in a functional rather than formal manner. This Court believes that it does.

While West Virginia gives weight to the words in an agreement used by the parties, a formal approach, its courts also recognize that "each case must in great measure depend on its own peculiar circumstances." Minor v. Pursglove Coal Mining Co., 161 S.E. 425, 426 (W. Va. 1931); see also First Huntington Nat. Bank v. Gideon-Broh Realty Co., 79 S.E.2d 675, 679-80 (W. Va. 1954). "When it appears from the context that another meaning was intended [by an Agreement] such [formal] words will not be applied in their

---

relationship, creates no executory burdens in the debtor, destroys the intent behind § 365(d)(4) and fails to pass muster under certain equitable considerations. Baker at 220 n.6. United Airlines explains the distinction succinctly: "A state law that identified a 'lease' in a formal rather than a functional manner would conflict with the Code, because it would disrupt the federal system of separating financial from economic distress; a state approach that gives a little more or a little less weight to one of several 'factors' does not conflict with any federal rule, because there is none with which it could conflict." Id. at 615 (emphasis included)(citations omitted).

8

technical sense." Lane v. Board of Educ. of Lincoln County, 131 S.E.2d 165, 169 (W. Va. 1963).

Because this Court believes that West Virginia considers the substantive nature of an instrument in determining whether it constitutes a lease, this Court believes that this action must be remanded for further consideration of the 1968 Agreement pursuant to West Virginia law.[3]

B. Assignment and Forfeiture Holding

As stated above, Rose also argues that the bankruptcy court erred in its findings with regard to the 1974 assignment of the Agreement and the covenant against illegal and immoral activity. This Court finds no error in the bankruptcy court's analysis on either of these remaining issues. First, this Court agrees that the 1974 assignment to the New Vrindaban Community, Inc. complied with the Agreement's provision that any assignment be made to a religious foundation, institution, corporation or group generally holding to the philosophic concept of maintaining a religious retreat or philosophic Ashram. Second, this Court agrees that forfeiture of the Agreement is not available for the alleged breach of an implied covenant in this particular case. See McKenzie v. Cherry River Coal & Coke Co., 466 S.E.2d 810, 817 (W. Va. 1995).

---

[3] It should be noted that if the bankruptcy court finds the Agreement to be a lease under West Virginia law, it should address whether the lease is residential and apply § 365(d)(4) if applicable.

9

Accordingly, this Court affirms the bankruptcy court's holding on these two points.

IV. <u>Conclusion</u>

For the reasons stated above, the order of the United States Bankruptcy Court for the Northern District of West Virginia granting summary judgment in favor of the debtor is hereby VACATED and this matter is REMANDED to the Bankruptcy Court for further consideration consistent with this memorandum opinion and order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the United States Bankruptcy Court for the Northern District of West Virginia. It is further DIRECTED that this appeal be DISMISSED and STRICKEN from the active docket of this Court.

DATED: July 25, 2006

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE